UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURIS HEALTH, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>NOAH MEDICAL CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-08073-WHO<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 3, 29, 30, 37 |

Plaintiff Auris Health, Inc. ("Auris") seeks injunctive relief against its former employees, including Enrique Romo, Kenneth Nip, and Diana Cardona Ujueta, and seeks that relief and damages against its competitor and their current employer, Noah Medical Corp. ("Noah") (collectively "the defendants"), for misappropriating trade secrets and other related torts. Auris had an agreement with Romo that contained arbitration provisions, including one that carved out injunctive relief. Noah, a non-signatory to the agreement at issue, joins with the above-named former employees to try to compel Auris's claims against Noah and Romo to arbitration and stay the remaining claims until that arbitration is complete.

The motion is DENIED. The injunctive relief carveout is not unconscionable, and Auris only seeks injunctive relief against Romo. Equitable estoppel poses no barrier to the misappropriation of trade secrets claim, which depends on the alleged conduct of Noah and individual defendants in addition to Romo. I decline to enforce arbitration of the tortious interference with contract and Unfair Competition Law ("UCL") claims under California Civil Procedure Code sections 1281.2(c) and (d), even if they may be based on Romo's agreement with Auris. Doing so would risk conflicting rulings on common issues of law or fact between the arbitrated and litigated claims. And a stay of any claims would only delay resolution of this

matter and is not warranted.

## BACKGROUND

This case arises from the alleged misappropriation of trade secrets and breaches of contract by former Auris employees who left the company and began working for Noah. *See* First Am. Compl. ("FAC") [Dkt. No. 36] ¶¶ 1, 9.[1]  Both companies work in the field of medical robotics. *Id*. ¶¶ 2, 5.[2]

A former Auris executive, Jian Zhang (who is not named in this suit), founded Noah in 2018 and serves as its CEO. *Id*. ¶ 5.  The FAC alleges that Noah has hired more than 20 former Auris employees, comprising more than 10% of its workforce. *Id*. ¶ 80.  Of these former Auris employees who now work for Noah, one is particularly important to the underlying motion: defendant Romo, who is Noah's Vice President of Research and Innovation. *See id*. ¶ 7.

Romo worked at Auris from 2012 to September 2019, supervised "Auris's early stage innovations for its robotics platforms," and allegedly "had a hand in nearly all aspects of research and development" at the company. *Id*. ¶¶ 7, 82.  As a condition of his employment, Romo signed an "At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement" (the "Agreement") on September 19, 2021. *Id*. ¶ 83 (citing Ex. A).

Among other things, Romo agreed to: (1) "hold in strictest confidence, and not to use, except for the benefit of the company, or to disclose . . . any confidential information of the

---

[1] The procedural posture of the case shifted after the motion to compel arbitration was filed, and bears mentioning.  The defendants concurrently filed a motion to dismiss the claims against Nip and Cardona, a DTSA claim brought by two other plaintiffs (Verb Surgical Inc., and Cilag GmbH International), and Auris's state law claims against Noah. Dkt. No. 29.  The plaintiffs then filed the FAC, thereby mooting the motion to dismiss. *See* Dkt. No. 36.  Although the FAC adds four breach of contract claims against four new defendants (Leobardo Centeno Contreras, Mouslim Tatarkhanov, Maziyar Keshtgar, and Sarika Pandhare), it does not change the issues presented in the motion to compel arbitration or the analysis needed to decide them.  Accordingly, I will cite to the FAC in this Order, as it is the operative complaint.

[2] Two other plaintiffs bring this suit: Verb Surgical Inc. ("Verb") and Cilag GmbH International ("Cilag").  FAC ¶ 1.  Verb and Auris were integrated by Johnson & Johnson in 2020, and now "operate together within [Johnson & Johnson's] Robotics and Digital Solutions business." *Id*. ¶ 3.  The FAC's references to "Auris" "refer to the combined Auris and Verb entity unless expressly stated otherwise," as does this Order. *See id*. n.1.  Cilag is a wholly owned subsidiary of Johnson & Johnson that allegedly owns certain intellectual property rights in the medical robotics technologies at issue. *Id*. ¶ 4.

company" during his employment and thereafter; (2) "assign to the company" any inventions solely or jointly conceived or developed during his employment; (3) assist Auris "in every proper way to secure the company's rights in the inventions," including any patent or other intellectual property rights; and (4) and upon his departure from Auris, to "deliver to the company" and not keep "any and all devices, records, data, notes, reports . . . [or] other documents or property . . . developed by me pursuant to my employment with the company or otherwise belonging to the company." *Id*. (citing Ex. A).

The Agreement also contained the following arbitration provisions, stating in part:

> G. <u>Arbitration</u>.  In consideration of my employment with the company, its promise to arbitrate all employment-related disputes and my receipt of the compensation, pay raises and other benefits paid to me by the company, at present and in the future, I agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, stockholder or benefit plan of the company in their capacity as such or otherwise) arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, shall be subject to binding arbitration under the arbitration rules set forth in California Code of Civil Procedure section 1280 through 1294.2, including section 1283.05 (the "Rules") and pursuant to California law.
>
> J. <u>Availability of Injunctive Relief.</u>  In addition to the right under the rules to petition the court for provisional relief, I agree that any party may also petition the court for injunctive relief where either party alleges or claims a violation of the At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement between me and the company or any other agreement regarding trade secrets, confidential information, non-solicitation or Labor Code § 2870.

*Id.*, Ex. A at 4-5.

Romo left Auris in September 2019.  FAC ¶ 82.  The FAC alleges that in the months leading up to his departure, Romo "took steps to prepare for performing the same role at Noah that he had played at Auris," including "collecting plaintiffs' trade secrets and confidential information so that he could use it at Noah." *Id*. ¶ 88.  These steps allegedly included: Romo sending to his personal Gmail account a PowerPoint presentation that depicted an endoscopic system developed by his team; copying to a USB drive presentations, engineering test and lab data, and workshop notes related to Auris's endoscopic systems and instruments; and copying from his Auris laptop to a USB drive a folder titled "pics for memories" that instead contained "extensive information

related to his work at Auris." *Id*. ¶¶ 89-93.

Nine months after Romo left Auris, he joined Noah as Vice President of Research and Innovation in May 2020. *Id*. ¶ 98. On June 2, 2020, Noah filed a provisional patent application for a robotic endoscopy system that listed Romo as the sole inventor. *Id*. ¶ 16. The FAC alleges that the device described in that provisional application "closely resembled a device developed by Auris's Research and Innovation team primarily in 2018" and that the application's timing is "inconsistent with the claim that Romo invented this during his employment at Noah." *Id*. The FAC contends that the innovations described in the provisional application's disclosure "represent plaintiffs' trade secrets misappropriated by Romo." *Id*.

Romo is not the only former Auris employee named in the complaint who is accused of stealing trade secrets from the company and then using them at Noah. The FAC also names:

- Cardona, Auris's Senior Robotics and Controls Engineer, who joined Noah in August 2021, and who allegedly emailed to her personal Gmail account her lab notebooks and copied Auris files to her own external hard drive. *Id*. ¶¶ 110-127.

- Nip, who worked at Auris as a Manufacturing Sustaining Engineering Manager and joined Noah in May 2020, and who allegedly downloaded detailed documents relating to Auris's bronchoscope. *Id*. ¶¶ 128-142.

- Centeno, who worked at Auris as a Principal Research and Development Technician until March 2021, and who allegedly downloaded to multiple USB devices files, photographs, and documents related to Auris's endoscopic systems, and erased certain directories from one of his Auris laptops in an effort to hide such downloads. *Id*. ¶¶ 143-171.

- Tatarkhanov, who worked as a Staff Software Systems Engineer and Senior Software Engineering Manager before he left Auris in March 2021, and who allegedly downloaded over 60 documents from Auris's internal systems the first business day after he resigned. *Id.* ¶¶ 172-185.

- Keshtgar, who worked as a Staff Research and Development Mechanical Engineer at Auris from January to November 2020, and who allegedly downloaded "dozens of documents related to . . . the design, manufacturing, and testing of Auris's endoscopes" during his last week at the company. *Id.* ¶¶ 186-199.

- Pandhare, who worked on Auris's Clinical Engineering team until she left in May 2021, and who allegedly downloaded documents that detailed how Auris

4

conducted certain studies, along with training plans and a user manual. *Id*. ¶¶ 200-216.

The FAC alleges that in mid-2021, another former Auris employee downloaded "thousands of confidential project files and the entire requirement set for Auris's robotic platform" and started working at Noah three days later. *Id*. ¶¶ 17-18. Over the next several months, the plaintiffs allegedly learned that other Noah employees had taken or retained their confidential information, and sought its return. *Id*. ¶ 19. The FAC alleges that Noah returned files on behalf of Romo and others, but that some information has not been returned. *See id*. ¶¶ 19, 23, 104-108, 124, 137.

The plaintiffs sued Noah, Romo, Cardona, and Nip in December 2022, alleging misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), breaches of contract, tortious interference with contract, and a violation of California's Unfair Competition Law. Dkt. No. 1. After the defendants separately filed motions to compel arbitration and dismiss the claims, the plaintiffs filed the FAC. Dkt. Nos. 29, 30, 36. The motion to compel arbitration remains at issue.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs motions to compel arbitration. 9 U.S.C. §§ 1 *et seq*. In deciding whether to compel arbitration, the court must consider two "gateway issues": (1) whether there is a valid agreement to arbitrate between the parties, and if so (2) whether the agreement encompasses the dispute. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation and quotation marks omitted). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**DISCUSSION**

It is undisputed that the Agreement between Auris and Romo includes arbitration provisions. *See* Mot. [Dkt. No. 30] 1:20-22; Oppo. [Dkt. No. 35] 6:7-12; *see also* FAC, Ex. A.[3] The defendants' motion poses three other questions. First, can Auris assert claims against Romo seeking injunctive relief, or is a carveout for such claims among the arbitration provisions unconscionable and thus unenforceable? *See* Mot. at 13:3-9. Second, can Noah compel arbitration as a non-signatory under equitable estoppel? *See id.* at 6:12-13. Finally, if any claims against Romo and Noah are subject to arbitration, should the remaining claims against other defendants be stayed pending the resolution of that arbitration? *See id.* at 16:5-9. I answer each in turn.

## I.   CLAIMS AGAINST ROMO

"It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). Under California law, a contract provision is unenforceable if it is both procedurally and substantively unconscionable. *See id.* Procedural unconscionability focuses on "oppression or surprise that results from unequal bargaining power," while substantive unconscionability considers "overly harsh or one-sided results." *MacClelland v. CellCo P'ship*, 609 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022) (citations omitted). Although both procedural and substantive unconscionability must be present for a court to deem a contract provision unenforceable, "they need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (citation omitted). Instead, they "operate on a sliding scale: the lesser the procedural unconscionability, the greater substantive unconscionability must be shown, and vice versa." *MacClelland*, 609 F. Supp. 3d at 1033 (same).

Auris asserts two claims against Romo: misappropriation of trade secrets in violation of the DTSA, and breach of contract. FAC ¶¶ 217-250. Both claims seek only injunctive relief against

---

[3] Although the FAC alleges that other defendants signed agreements with Auris, including arbitration agreements, the focus of the pending motion is the agreement between Romo and Auris. *See* FAC ¶¶ 111, 144, 202.

6

Romo. *See id*. ¶¶ 240-242, 250. The parties' dispute centers on whether these claims are permitted under section 10(J) of the Agreement, an arbitration provision which states in relevant part:

> In addition to the right under the rules to petition the court for provisional relief, I agree that any party may also petition the court for injunctive relief where either party alleges or claims a violation of the At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement between me and the company or any other agreement regarding trade secrets, confidential information, non-solicitation or Labor Code § 2870.

FAC, Ex. A at 5. According to the defendants, this term is unconscionable, unenforceable, and severable, meaning the claims against Romo must be arbitrated. Mot. at 13:3-9.

### A. Procedural Unconscionability

The defendants first argue that section 10(J) is procedurally unconscionable because it is a term of adhesion. *Id*. at 13:16-22. "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citations omitted). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in no real negotiation." *Id*. (citation and quotation marks omitted). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id*. (citation omitted).

Under California law, "oppression may be established by showing the contract was one of adhesion." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (citation omitted). A term or contract of adhesion indicates a standardized agreement or provision "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 1260-61 (same). While "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Id*. at 1261 (citations and quotation marks omitted). Specifically, the Ninth Circuit has stated that under California law, "if an employee must sign a

7

non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high." *Id.* (same).

The defendants argue that section 10(J) is a term of adhesion because Auris provided the form employment contract to Romo "without an opportunity for revisions and made it a condition of his employment." Mot. at 13:21-14:2. In support, they point to portions of the complaint and Agreement that state that the Agreement was a condition of Romo's employment. *Id.*; *see also* FAC ¶ 83 ("As a condition of his employment, Romo signed an At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement . . ."); FAC, Ex. A at 1 ("As a condition of my employment with Auris. . . . I agree to the following . . .").

But as the Ninth Circuit noted in *Poublon*, "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." 846 F.3d at 1261-62; *see also MacClelland*, 609 F. Supp. 3d at 1034 (finding that "the adhesive nature of the agreement presents only a minimal finding of procedural unconscionability"). The defendants do not argue any "other indications of oppression or surprise" that persuade me "to conclude that the degree of procedural unconscionability is high." *See Poublon*, 846 F.3d at 1262; *see also* Mot. at 13:21-14:6; Reply [Dkt. No. 40] 11:8-27. Even if I accept the defendants' argument that section 10(J) of the Agreement is a term of adhesion, without more, this only indicates a low degree of procedural unconscionability.

### B. Substantive Unconscionability

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it shocks the conscience." *Chavarria*, 733 F.3d at 923 (citation and quotation marks omitted). The defendants argue that section 10(J) is substantively unconscionable "because it provides an arbitration carveout for claims for permanent (not just preliminary) injunctive relief, which improperly favors employers." Mot. at 14:7-11. According to the defendants, that one-sidedness is furthered by the fact that the carveout includes claims for non-solicitation, which they contend "could only be brought by an employer, not an employee." *See id.* at 15:1-12.

The plaintiffs note that the provision is facially mutual, as it allows both Auris and Romo

to bring claims for injunctive relief. Oppo. at 10:14-22. They further argue that the enumerated violations are not "limited to claims an employer could, or would be more likely to, assert," in part because they include a claim only the employee could bring under California Labor Code section 2870. *Id*. at 10:22-25. They also contend that an employee "could ask a court to enjoin Auris from using the pre-employment inventions for which the employee had retained rights pursuant to section 3.A of the Agreement." *Id*. at 11:6-9.

The plaintiffs have the better argument. The defendants' contention that section 10(J) is unfairly one-sided is offset by the claims that would be available only to an employee. Section 2870 of the California Labor Code protects employee rights to certain inventions that they develop entirely on their own time and without using employer resources or trade secret information. *See* Cal. Lab. Code § 2870(a). Moreover, section 10(J) allows the parties to seek injunctive relief for any alleged violation of the Agreement between Auris and Romo. *See* FAC, Ex. A at 5. This includes section 3(A), which allowed Romo to retain ownership of "all inventions, original works of authorship, developments, improvements, and trade secrets" he made prior to his employment with Auris. *See id*. at 2. It is possible, then, that Romo could have pursued claims for injunctive relief for the misuse of his own inventions, works, or trade secrets.

In addition, the California Supreme Court has rejected the argument that carveout provisions allowing injunctive relief are "unfairly one-sided merely because one side is, as a practical matter, more likely to make use of it." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1248 n.4 (2016). *Baltazar* is somewhat distinguishable, as it focused on a clause allowing provisional injunctive relief that reiterated procedural protections that already existed under California law. *See id*. at 1247. But the court's underlying consideration—that provisions are not "unfairly one-sided merely because one side is, as a practical matter, more likely to make use of it"—carries over here. *See id*. at 1248 n.4. And given the nature of the claims for which Romo and Auris could seek injunctive relief (particularly those that only Romo could assert to protect his inventions) I am not convinced that Auris, as a practical matter, is more likely to make use of the carveout provision. At most, any distinction between preliminary and permanent injunctive relief suggests a "minimal amount of substantive unconscionability." *See Boyle v. Relativity Educ.*,

9

*LLC*, No. CV-16-9402, 2017 WL 11636425, at *5 (C.D. Cal. May 12, 2017) (distinguishing *Baltazar* from the carveout provision at hand because the latter allowed the employer to obtain provisional remedies as well as a permanent injunction, but finding that "[w]hile this distinction might otherwise suggest a minimal amount of substantive unconscionability, it is insufficient to render the arbitration clause unenforceable").

Under *Poublon*, given the low degree of procedural unconscionability, a minimal amount of substantive unconscionability is not enough to render the carveout provision unconscionable. *See* 846 F.3d at 1261 ("if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high") (citations and quotation marks omitted). The defendants have not made such a showing.

The plaintiffs only seek injunctive relief against Romo. Their claims against him are permitted under the arbitration provisions within the Agreement. The defendants' motion to compel arbitration of these claims is DENIED.

## II.     CLAIMS AGAINST NOAH

Next, the defendants argue that equitable estoppel requires arbitration of Auris's claims of misappropriation of trade secrets, tortious interference of contract, and UCL claims against Noah. Mot. at 6:12-12:25. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation and quotation marks omitted).

Under California law, when "a non-signatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances" described in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). They are:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Id*. at 1128-29 (citations and quotation marks omitted). As the Ninth Circuit recently stated,

10

1    "[e]quitable estoppel thus prevents a plaintiff from having it both ways by seeking to hold a non-
2    signatory liable for obligations imposed by an agreement while at the same time repudiating the
3    arbitration clause of that very agreement." *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 949 (9th
4    Cir. 2022) (same).

5        I start with the misappropriation of trade secrets claim. To state that claim under the
6    DTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant
7    misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta
8    Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 868, 877 (N.D. Cal. 2018) (citation omitted). Under
9    the DTSA, "trade secret" is defined as "all forms and types of financial, business, scientific,
10   technical, economic, or engineering information" that "the owner thereof has taken reasonable
11   measures to keep . . . secret" and "derives independent economic value . . . from not being
12   generally known to, and not being readily ascertainable through proper means by, another person
13   who can obtain economic value from the disclosure or use of the information." 18 U.S.C. §
14   1839(3).

15       The defendants contend that the "only factual allegations to support the claim that Romo
16   had obligations to maintain secrecy was the same agreement that includes the arbitration clause,"
17   and that as alleged, "Noah's knowledge [of the alleged trade secrets] was derived from a person
18   (Romo) who owed a duty to plaintiffs to maintain the secrecy, and limit the use of, those trade
19   secrets." Mot. at 7:17-8:4 (citing in part FAC ¶ 238). According to the defendants, this means the
20   claim should be arbitrated. *Id*. at 8:5-7.

21       But the defendants overlook other allegations underlying the DTSA claim that involve the
22   actions of individual defendants other than Romo. The FAC alleges that the plaintiffs took
23   "reasonable steps to protect the secrecy of their trade secret material, including all material that
24   plaintiffs have alleged in this complaint that Noah, Romo, Cardona, and/or Nip misappropriated,"
25   and attaches "Employee Secrecy, Intellectual Property, and Non-Solicitation Agreements" signed
26   by Cardona and Nip that include confidentiality provisions. FAC ¶ 220; *see also id.*, Exs. C, D.
27   The FAC then details the type of trade secret information that Nip and Cardona allegedly
28   misappropriated. *See id*. ¶¶ 226-229. It also includes allegations about the misappropriation of

11

1  trade secrets by the newly added defendants (Centeno, Tatarkhanov, Keshtgar, and Pandhare) and
2  alleges that they were provided this information while at Auris "under circumstances requiring
3  them to maintain the information in confidence." *Id*. ¶¶ 222, 230-237.

4  True, the FAC features Romo's alleged conduct in the allegations against Noah. It alleges
5  that "Noah misappropriated trade secrets" of the plaintiffs "by disclosing and using those trade
6  secrets in connection with" the Romo's provisional patent application "without Auris's consent
7  and with knowledge at that time that Noah's knowledge was derived from a person (Romo) who
8  owed a duty to plaintiffs to maintain the secrecy, and limit the use of, those trade secrets." *Id*. ¶
9  238. But it also states in the next sentence that "[o]n information and belief, Noah used other trade
10 secrets of plaintiffs referenced herein." *Id*. This, coupled with the defendant-specific allegations
11 cited above, and the allegations that the individual defendants each "acted, at least in part, for the
12 benefit of Noah," shows that the DTSA claim is not dependent on the Agreement with Romo. *See*
13 *id*. ¶¶ 227, 229, 231, 233, 235, 237.

14 Because of the numerous allegations involving the other individual defendants, the
15 plaintiffs do not rely on the terms of the Agreement in asserting the misappropriation of trade
16 secrets claim against Noah. The claim is also not "intimately founded in and intertwined with" the
17 Agreement, and any allegations of interdependent misconduct are not "founded in or intimately
18 connected with" the Agreement's obligations. *See Kramer*, 705 F. Supp. at 1128-29. The limited
19 circumstances where equitable estoppel applies are therefore not satisfied.

20 The remaining claims against Noah might have a different outcome but for California Civil
21 Procedure Code section 1281.2(c). As pleaded, the tortious interference with contract claim
22 appears to depend on the Agreement between Romo and Auris; it does not mention any other
23 defendants or agreements. *See* FAC ¶¶ 252-259. It seems, then, that Auris "must rely on the
24 terms of the written agreement in asserting" this claim against Noah, a claim that is "intimately
25 founded in and intertwined with the underlying contract." *See Kramer*, 705 F.3d at 1128. As
26 pleaded, the claim rests on whether Romo breached the terms of his Agreement with Auris and
27 whether Noah intentionally acted in a way designed to induce that breach. *See San Miguel v. HP*
28 *Inc.*, 317 F. Supp. 3d 1075, 1094 (N.D. Cal. 2018) (stating the elements of a tortious interference

with contract claim, including "a valid contract between plaintiff and a third party"; "defendant's intentional acts designed to induce breach or disruption of the contract"; and "actual breach or disruption") (citation omitted); *Breathe Techs., Inc. v. New Aera, Inc.*, No. 19-CV-07691-EJD, 2020 WL 4747896, at *1, 4-6 (N.D. Cal. Aug. 17, 2020) (finding that a tortious interference with contract claim brought against two non-signatory defendants would "turn on whether" the signatory defendant breached the terms of his At Will Employment Confidential Information, Invention Assignment, and Arbitration Agreement with the plaintiff and therefore relied on and was intertwined with the underlying agreement so that equitable estoppel compelled arbitration).

The same is true for Auris's UCL claim against Noah. It is premised on Romo's contractual obligation to assign to Auris the inventions that he developed while employed there. *See* FAC ¶¶ 275-279. The claim alleges that "Noah interfered with this obligation by filing a patent application claiming Auris's inventions" as its own, and "interfered with Romo's contractual obligations to Auris for the purpose of benefitting from Auris's inventions." *Id*. ¶¶ 275-276. Auris alleges that these actions constitute unfair competition in violation of the UCL. *Id*. ¶ 277.

Auris responds that "Noah has shown no inequity in litigating Noah's independent interference with Romo's obligations to assign to Auris inventions arising from his Auris employment or Noah's related unfair competition." Oppo. at 21:22-24. But because Auris attempts to hold Noah liable for obligations imposed by the Agreement (the provisions relating to invention assignment and patent rights) while at the same time repudiating the Agreement's arbitration provisions, there is some equity in Noah's position. *See id*. at 13:26-14:4 (citing *Kramer*, 705 F.3d at 1133); *see also Ngo*, 23 F.4th at 949.

That said, California Civil Procedure Code section 1281.2(c) provides an independent basis for denying arbitration. *See* Oppo. at 24:1-25:2. This provision allows the court to refuse to enforce an arbitration agreement when

> [a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.

13

Cal. Civ. Proc. Code § 1281.2(c), (d). "Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement," and "giv[es] the court discretion not to enforce the arbitration agreement under such circumstances." *Mount Diablo Med. Ctr. v. Health Net of Cal., Inc.*, 101 Cal. App. 4th 711, 726 (2002). The Supreme Court has held that "[w]hile the FAA therefore preempts application of state laws which render arbitration agreements unenforceable, it does not follow, however, that the federal law has preclusive effect in a case where the parties have chosen in their arbitration agreement to abide by state rules." *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989) (cleaned up). Instead, "because the thrust of the federal law is that arbitration is strictly a matter of contract, the parties to an arbitration agreement should be at liberty to choose the terms under which they will arbitrate." *Id.* (same).

The Agreement between Auris and Romo expressly invokes California's arbitration rules found in sections 1280 through 1294.2 of the California Code of Civil Procedure. *See* FAC, Ex. A at 4. Although courts in this District have rejected section 1281.2(c)'s application when arbitration agreements include only general choice-of-law provisions that do not incorporate California procedural rules governing arbitration, that is not the case here. *See Hofer v. Emley*, No. 19-CV-02205-JSC, 2019 WL 4575389, at *9 (N.D. Cal. Sept. 20, 2019) (citing cases).

The question is whether the plaintiffs have shown that a possibility of conflicting rulings exists that warrants refusing to enforce the arbitration provisions as they relate to Auris's tortious interference and UCL claims against Noah. As plaintiffs argue, "the court and an arbitrator could disagree regarding, at least, what materials were taken, what was used by Noah, and what qualifies as plaintiffs' trade secrets." Oppo. at 24:20-23. The defendants' response seems to agree: it assumes that the claims against Romo and Noah will be compelled to arbitration and the remaining claims stayed, and as a result, there would be no conflicting rulings. *See* Reply at 14:15-21. As discussed below, I will not stay any claims.

Although the tortious inference and UCL claims appear to focus on Romo's Agreement with Auris, specifically the invention and patent provisions, the underlying acts also support the misappropriation of trade secrets claim and Auris's breach of contract claim against Romo. *See*

14

FAC ¶¶ 225, 246-248. Each of these claims arise, at least in part, "out of the same transaction or series of related transactions": the information that Romo allegedly took from Auris and used on Noah's behalf. *See* Cal. Civ. Proc. Code § 1281.2(c). Sending the tortious interference and UCL claims to arbitration, while allowing the other claims to proceed here, risks the possibility of conflicting rulings on common issues of law and fact.

Section 1281.2(d) gives me four options. I may: (1) refuse to enforce the arbitration provisions; (2) order intervention or joinder as to all or only certain issues; (3) order arbitration among the parties who have agreed to arbitrate and stay this action pending the outcome of that arbitration; or (4) stay arbitration pending the outcome of this action. I will refuse to enforce the arbitration provisions and allow the tortious interference with contract and UCL claims to be litigated.

The defendants' motion to compel arbitration of Auris's claims against Noah is DENIED.

### III.     REMAINING CLAIMS

The defendants also move to stay the remaining claims pending the resolution of any that must be arbitrated. Mot. at 16:3-17:8. I decline to compel arbitration for the reasons stated above; a stay is not warranted in any event.

When plaintiffs assert both arbitrable and non-arbitrable claims, district courts have "discretion whether to proceed with the non-arbitrable claims before or after the arbitration and [have] . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants." *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 870 (N.D. Cal. 2015) (citations and quotation marks omitted). "While the court has discretion to grant or deny a stay, the Ninth Circuit has noted a preference for proceeding with the non-arbitrable claims when feasible." *Gray v. SEIU,* No. 20-CV-01980-JSW, 2020 WL 12228937, at *5 (N.D. Cal. Aug. 5, 2020) (same). When considering whether a stay is warranted, courts take into account "the competing interests which will be affected," including: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

15

1  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

2  These factors weigh against staying the remaining claims. The plaintiffs have alleged a "systematic[] and ongoing misappropriation of trade secrets" by Noah and multiple Noah employees, which exceed the tortious interference and UCL claims against Noah. *See* FAC ¶ 1. It also alleges that the plaintiffs' investigation into the "full extent" of the alleged misappropriation remains ongoing, and that certain information has not been returned to Auris. *Id*. ¶ 23. The FAC also seeks injunctive relief to stop this misappropriation. *Id*. at 67. The plaintiffs could reasonably be damaged if they were not permitted to pursue the remaining claims and stop the allegedly ongoing misappropriation of trade secrets or breaches of contract.

The defendants argue that the individuals would be subject to hardship and inequity if they were required to litigate by participating in "time-consuming and expensive litigation" that lies between Auris and a potential competitor. *See* Mot. at 16:24-17:2. But Auris's DTSA claim against Noah may be litigated, which undercuts this point. Moreover, it is in the individuals' interest to resolve the remaining claims sooner rather than later.

Finally, a stay would not advance the interests of justice because of the scope of the tortious interference and UCL claims against Noah, which appear to focus on the Agreement between Romo and Auris. Whether Noah tortiously interfered with that contract and thus violated the UCL does not, on its own, resolve whether the defendants misappropriated the plaintiffs' trade secrets in violation of the DTSA, or whether the other individual defendants breached their contracts with the plaintiffs. Arbitration may reduce the number of claims at issue in this case, but it does not "resolve the entire case," as the defendants contend. *See id*. at 17:3-5.

**IV.   MOTIONS TO SEAL**

The plaintiffs also filed unopposed motions to redact portions of both their initial and amended complaints. Dkt. Nos. 3, 37. There is a "strong presumption in favor of access to court records" that may be rebutted, in this instance, if the party seeking sealing or redaction shows "compelling reasons" to do so. *See Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016); *see also Ponomarenko v. Shapiro*, No. 16-CV-02763-BLF, 2017 WL 3605226, at *2 (N.D. Cal. Aug. 21, 2017) (stating that courts in this District and elsewhere within

16

the Ninth Circuit "have applied the compelling reasons standard to a motion to seal involving the filing of a complaint because a complaint is the foundation of a lawsuit.") (citations and quotation marks omitted).

The motions seek to redact overlapping information from the initial complaint and the FAC: (1) illustrations from internal Auris presentations; (2) certain trade secrets about Auris's endoscopic systems; (3) certain trade secrets related to the plaintiffs' platform design and testing; (4) systems and features described in Auris's invention disclosures; (5) trade secrets used by Noah and Romo in their provisional patent application; and (6) information Cardona allegedly copied. *See* Dkt. Nos. 3, 37.

In addition, the plaintiffs seek to redact from the FAC: (1) information about a product that Verb was developing and services it received from a third party; (2) information about an Auris platform; (3) certain trade secrets about Cilag's endoscopic and surgical instruments; (4) information that Romo allegedly took screenshots of; (5) the strategic projects that Centeno worked on; (6) the Auris files that Centeno had access to; and (7) information contained within a document that Keshtgar allegedly took. *See* Dkt. No. 37.

The plaintiffs contend that these proposed redactions include trade secret information, confidential research, design, and development information, and confidential business supplier information belonging to one of more of the plaintiffs. *See* First Eberhart Decl. [Dkt. No. 3-1] ¶ 4; Second Eberhart Decl. [Dkt. No. 37-1] ¶ 4. Given the "fiercely competitive" nature of the medical robotics market, they contend, disclosure of this information "would likely result in significant competitive injury" to the plaintiffs, in that their competitors "would gain an unfair business advantage over plaintiffs based on confidential and non-public information that would otherwise not be lawfully available to them." First Eberhart Decl. ¶ 3; Second Eberhart Decl. ¶ 3.

Compelling reasons may exist to seal information if it "might be used . . . as sources of business information that might harm a litigant's competitive standing" or "release trade secrets." *Center for Auto Safety*, 809 F.3d at 1097; *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The information that the plaintiffs seek to redact falls within these categories. Moreover, the requested redactions are narrowly tailored, as required by this District's

17

Local Rules, and do not impede an understanding of the issues or materials facts underlying the complaint. *See* Civil L.R. 79-5(c)(3). The motions to redact the complaints are GRANTED.

## CONCLUSION

The defendants' motion to compel arbitration is DENIED.

**IT IS SO ORDERED.**

Dated: April 6, 2023



William H. Orrick
United States District Judge