UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURIS HEALTH, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NOAH MEDICAL CORPORATION, et al.,<br><br>    Defendants. | Case No. 22-cv-08073-AMO   (LJC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOVING DEFENDANTS' REQUESTS FOR RELIEF IN JOINT STATEMENT NOS. 1 AND 2 AND DENYING AND GRANTING ADMIN MOTIONS TO SEAL**<br><br>Re: ECF. Nos. 73, 74, 84, 86 |

Before the Court in this trade secrets case are two discovery disputes set forth in the parties' Joint Statement Nos. 1 and 2. ECF Nos. 73, 74. Moving Defendants are Noah Medical Corporation (Noah Medical), Enrique Romo, Diana Cardona Ujueta, and Kenneth Nip. Plaintiffs Auris Health, Inc. (Auris), Verb Surgical Inc. (Verb), and Cilag Gmbh International (Cilag) oppose Moving Defendants' requests for relief. The first dispute concerns Plaintiffs' responses to an interrogatory that asks them to identify with precision and specificity each alleged trade secret they contend is at issue (Interrogatory No. 1). ECF No. 73. Each Moving Defendant received an identical Interrogatory No. 1. The second dispute concerns several interrogatories served by Moving Defendants on each Plaintiff that purportedly seek information related to elements of Plaintiffs' Defend Trade Secrets Act (DTSA) cause of action. Plaintiffs contend that these interrogatories impermissibly exceed the 25-interrogatory limit of Federal Rule of Civil Procedure 33(a)(1). ECF No. 74. Having read the briefing filed by the parties and carefully considered their arguments, the record in this case, and the relevant legal authority, the Court **GRANTS IN PART** and **DENIES IN PART** Moving Defendants' requests for relief.

I.   BACKGROUND

This case arises from the alleged misappropriation of trade secrets and beaches of contracts

by former employees of Auris who left the company and began working for Noah Medical. ECF No. 36 (First Amended Complaint, or FAC) ¶ 1.[1] Both companies are in the medical robotics field. Id. ¶¶ 2, 5. Noah Medical was founded in 2018 by a former Auris executive who now serves as Noah Medical's CEO and was Auris' second employee. Id. ¶¶ 5-6.

Plaintiffs have named seven former Auris employees as individual Defendants, including Enrique Romo, Noah Medical's Vice President of Research and Innovation. Id. ¶ 7. Plaintiffs allege that Romo "had a hand in nearly all aspects of research and development" at Auris during his time there from 2012 to September 2019. Id. ¶ 82. Auris alleges that Romo sent to his personal Gmail account an email with a PowerPoint presentation depicting an endoscopic system developed by his team at Auris, and that he copied to a USB drive "extensive information related to his work at Auris" in the form of presentations, engineering test and lab data, and workshop notes. Id. ¶¶ 89-93. Other named individual Defendants—who allegedly emailed, downloaded, and/or copied thousands of documents containing Auris trade secrets—include Diana Cardona Ujueta, Auris' former Senior Robotics and Controls Engineer, and Kenneth Nip, Auris' former Manufacturing Sustaining Engineer Manager, both of whom joined Noah Medical in 2021 and 2020, respectively. Id. ¶¶ 110-127, 128-142.

Plaintiffs filed suit on December 12, 2022. After Defendants Noah Medical, Nip, Romo, and Cardona Ujueta moved to dismiss the complaint and to compel arbitration, Plaintiffs filed their First Amended Complaint on February 24, 2023. ECF Nos. 29, 30, 36. The FAC added four more former Auris employees as defendants--Leobardo Centeno Contreras, Mouslim Tatarkhanov, Maziyar Keshtgar, and Sarika Pandhare. On February 28, 2023, Plaintiffs served their First Set of Requests for Production on Noah Medical, Nip, Romo, and Cardona Ujueta. ECF No. 93 at 3.

On April 6, 2023, the Court denied the motion to compel arbitration (ECF No. 58) and on

---

[1] The two other plaintiffs in this lawsuit are Verb and Cilag. FAC ¶ 1. Verb was founded in 2015 as a joint venture between Johnson & Johnson (J&J) and Verily Life Sciences. Id. ¶ 3. In 2019, Auris was acquired by Ethicon, Inc., a subsidiary of J&J. Id. ¶ 2. In early 2020, J&J acquired complete ownership of Verb and integrated Verb and Auris, which now operate together within J&J's Robotics and Digital Solutions business. Id. ¶ 3. Cilag is a wholly owned subsidiary of J&J which owns certain intellectual property rights in the medical robotics technologies at issue. Id. ¶ 4.

2

this same day each Defendant, except for Centeno Contreras, served a First Set of Interrogatories on each Plaintiff—each set consisting of seven interrogatories. ECF No. 85-1.[2] Relevant to the pending dispute, Interrogatory No. 1 requested that Plaintiffs:

> IDENTIFY WITH PRECISION AND SPECIFICITY EACH AND EVERY ALLEGED TRADE SECRET that PLAINTIFF contends DEFENDANT… acquired without PLAINTIFF's authorization. ("IDENTIFY WITH PRECISION AND SPECIFICITY EACH AND EVERY ALLEGED TRADE SECRET" as used herein means to provide a specific description of each such alleged trade secret, on an individual basis for each such alleged trade secret, in such a manner that the exact identity, scope, boundaries, constitutive elements, and content of each such alleged trade secret are fully disclosed in writing, in contrast to an agglomerated set of conclusory phrases that does not separately list and describe each such alleged trade secret, in contrast to a mere list of documents or file names, and with precision above that required by any applicable pre-discovery trade secret claim identification requirement).

ECF No. 85-1 at 6. It appears that the seven propounding Defendants each served the same Interrogatory No. 1 on each Plaintiff, modified only to address the alleged trade secret violations that pertained to each party specifically. See e.g., id. at 30, 38, 46.

On May 12, 2023, Plaintiffs responded to the interrogatories, asserting various objections, and directing Defendants to Plaintiffs' forthcoming "trade secret disclosure." ECF No. 84-1. Thereafter, on May 31, 2023, Plaintiffs served a Pre-Discovery Identification of Alleged Trade Secrets as to Noah Medical, Romo, Cardona Ujueta, and Nip. ECF No. 93 at 3. Less than a month later, on June 23, 2023, the parties filed Joint Statements Nos. 1 and 2 before the presiding judge, who then referred them to the undersigned. ECF Nos. 73, 74, 81. On July 20, 2023, Plaintiffs served an Amended Pre-Discovery Identification of Alleged Trade Secrets as to Noah Medical, Romo, Cardona Ujueta, and Nip, and a Pre-Discovery Identification of Alleged Trade Secrets as to Centeno Contreras, Keshtgar, Tatarkhanov, and Pandhare. ECF No. 93 at 3. Plaintiffs' May 31 and July 30, 2023 disclosures are collectively referred to as the "Trade Secret Identifications."

The Court set a hearing for oral argument on the disputes and to discuss the parties'

---

[2] These seven Defendants also served other discovery requests on April 6 and July 21, 2023, including requests for production and requests for admissions. ECF No. 93 at 3.

3

discovery schedule. ECF No. 81. Pursuant to the parties' request, the hearing was continued to August 8, 2023. ECF No. 83. At the hearing counsel for Plaintiffs and moving Defendants presented their arguments but were unable to offer any details regarding a proposed discovery schedule for the case that might balance the competing needs of the parties. The Court indicated its skepticism as to the need for early contention interrogatories and ordered the parties to file a joint statement with additional information regarding the discovery conducted up to that point, including document productions, what discovery remained to be completed, and a jointly proposed schedule that recognized the issues that arise in trade secret cases. ECF No. 92.

On August 24, 2023, Plaintiffs, Noah Medical, and all seven individual Defendants filed a Joint Statement addressing their progress on discovery. ECF No. 93. Plaintiffs stated that neither Noah Medical nor any other Defendant, except Romo, had begun production, and no Defendant had produced a single document deriving from their work at Noah.[3] Id. at 3-4. Plaintiffs have produced 105,445 pages, of which 101,887 pages are, according to Defendants, reproductions of the same documents that Defendants provided to Plaintiffs prior to the filing of this lawsuit. Id. at 4. In addition, the parties proposed a schedule for discovery that involves a sequence of deadlines for narrowing the asserted trade secrets. Id. at 5. On August 31, 2023, the Court held a further hearing on the status of discovery, adopted the parties' proposed deadlines, and approved their stipulation for the discovery of electronically stored information. ECF Nos. 96, 97.

## II. LEGAL STANDARD

In trade secret cases defining the scope of discovery is widely recognized as being particularly difficult. See Uni-Sys., LLC v. U.S. Tennis Ass'n, No. 17CV147KAMCLP, 2017 WL 4081904, *4 (E.D.N.Y. Sept. 13, 2017); Peter S. Menell et al., Trade Secret Case Management Judicial Guide, 2023 WL 4687411, Ch. 1.2.1 (2023). The quandary involved in identifying the trade secrets with the appropriate level of specificity, while also protecting trade secrets throughout the litigation, "often requires the court to assist the parties in customizing the discovery process to . . . facilitate[e] the exchange of sensitive information, often to competing

---

[3] Plaintiffs served requests for production on the original defendants on February 28, 2023, and requests on the new defendants on June 2, 2023. ECF No. 93 at 3.

business enterprise defendants." Menell et al., at Ch. 1.2.1. The Court in Social Apps, LLC v. Zynga, Inc. explained the sensitivities inherent in trade secret litigation.

> The nature of a trade secrets claim is such that pleading is necessarily general. To require more detail would be to force a plaintiff to disclose, in a publicly filed pleading, the very secrets it seeks to protect. However, the countervailing concern is that discovery must be limited to those matters that the plaintiff truly contends are secret. Otherwise the discovery mechanism, and the litigation itself, could become a tool to force a defendant to reveal its own trade secrets in defense against unfounded or specious claims."

No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012).

Now the Court turns to the rules that govern discovery in federal civil cases, and the use of contention interrogatories as a discovery device. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Contention interrogatories are governed primarily by Rule 33(a)(2):

> An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

"Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken." In re eBay Seller Antitrust Litig., No. C07-1882 JF, 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008). "In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." Id. Thus, as a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show that the responses would "contribute meaningfully" to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussions; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56. See In re Convergent Techs. Secs. Litig., 108 F.R.D. 328, 338–39 (N.D. Cal. 1985).

"These guidelines are not to be applied rigidly, and so any decision must be made on a case by case basis." HTC Corp. v. Tech. Props. Ltd., No. C 08-00882 JF, 2011 WL 97787, at *2 (N.D. Cal. Jan. 12, 2011); see In re eBay Seller, 2008 WL 5212170, at *1 & n.3 (acknowledging "non-rigid rule.") The requesting party has the "burden of justification" to overcome the "general policy…to defer propounding and answering contention interrogatories until near the end of the discovery period." In re Convergent Techs., 108 F.R.D. at 336.

### III. ADMINISTRATIVE MOTIONS TO SEAL

Before resolving the parties' discovery disputes, the Court will first address two pending administrative motions to file certain material under seal. ECF Nos. 84, 86.

After initially reviewing the parties' Joint Statements Nos. 1 and 2, the Court ordered Plaintiffs "to file under seal a complete copy of their Trade Secret Identification, including any supplements," and Defendants to "file a complete copy of Interrogatories Nos. 2 through 7, as well as Plaintiffs' responses…along with an accompanying motion to seal, if necessary to protect confidential information." ECF No. 81.

Defendants filed their Interrogatories Nos. 2 through 7 as well as Plaintiffs' responses and objections along with an Administrative Motion to Consider Whether Another Party's Material Should be Sealed. ECF Nos. 85, 85-1, 86. Defendants represented to the Court that Plaintiffs had designated their responses and objections as "Highly Confidential – Attorney's Eyes Only" pursuant to the parties' Stipulated Protective Order. ECF No. 86 at 2; see ECF No. 79. As required by Civil Local Rule 79-5(f), Plaintiffs filed a Statement Regarding Sealing in response to Defendants' motion. ECF No. 88. According to Plaintiffs, when they served their responses and objections on May 12, 2023, the Protective Order was not in place, and at that time they asked that their responses be treated as "Outside Counsel's Eyes Only" pursuant to an existing agreement on information sharing between the parties. Id. at 2. After the Protective Order was entered, Plaintiffs designated their *supplemental* responses as "Confidential," but not their original responses served in May. Id. Plaintiffs' position is that it is not seeking sealing of the materials filed by Defendants. Id. Accordingly, Defendants' Administrative Motion to Consider Whether Another Party's Material Should be Filed Under Seal is hereby **DENIED.**

6

In their response to the Court's Order, Plaintiffs filed an Administrative Motion to File Under Seal, along with a complete copy of their Trade Secret Identification. ECF No. 86. Plaintiffs argue that "good cause" exists to seal the Trade Secret Identification documents because disclosure could cause them irreparable injury. Id. at 3. For good cause shown, the Court hereby **GRANTS** Plaintiffs' Administrative Motion to File Under Seal.

## IV. JOINT STATEMENT NO. 1

Moving Defendants request an order requiring Plaintiffs to further respond to their Interrogatories No. 1, such that "each Plaintiff precisely identify each alleged trade secret it contends is at issue in writing with respect to each Moving Defendant, with precision and specificity, so that the actual contents of each alleged trade secret is divulged." ECF No. 73 at 2. Moving Defendants contend that Plaintiffs must, at this time, "divulge the actual content comprising each separate alleged trade secret," so that they can best investigate and prepare their defenses. Id. Moving Defendants state that they need to investigate what is in the public literature, and thus not a trade secret; what it independently developed so there is no misappropriation; and, in particular in this case, what employee-defendants merely possessed in personal drives or email accounts and did not take into Noah Medical. Id.

In Joint Statement No. 1, Plaintiffs represent that there are 78 distinct trade secrets,[4] and contend that their responses to the Moving Defendants' Interrogatories Nos. 1 are complete. ECF No. 73 at 4. In support of their position, Plaintiffs have filed a declaration by a medical robotics expert. ECF No. 73-5. The expert, having reviewed Plaintiffs' amended identification of trade secrets, *infra* at 3, opines that all 78 trade secrets asserted therein are described with reasonable particularity. Id. at ¶¶ 4, 17. Plaintiffs' expert also points to the "sufficient particularity" standard and opines that the standard has been met with respect to Trade Secrets Nos. 31, 32, and 37. Id. at ¶¶ 12, 14, 15, 17.

Moving Defendants correctly point out that the reasonable particularity standard is a pre-

---

[4] In the parties' August 24, 2023 Joint Statement, Plaintiffs refer to 130 trade secrets. ECF 93 at 6. This reflects the additional trade secrets set forth in the Pre-Discovery Identification of Alleged Trade Secrets as to Centeno Contreras, Keshtgar, Tatarkhanov, and Pandhare.

discovery test. ECF No. 73 at 3. The standard does not establish that Plaintiffs have satisfied their obligation, in the course of discovery, to identify the trade secrets. Id. Federal courts have required plaintiffs in federal cases to meet the reasonable particularity standard, deriving from California Code of Civil Procedure Section 2019.210, prior to commencing discovery. InteliClear, LLC v. ETC Global Holdings, Inc., 978 F.3d 653, 658, n.1 (9th Cir. 2020) (citing Social Apps, 2012 WL 2203063, at *1-3). In contrast, at the discovery phase, the level of detail that a plaintiff must provide in its trade secret disclosures is greater. The Ninth Circuit, reviewing a district court's grant of summary judgment, applied the reasonable particularity standard to determine whether a jury could be instructed to determine what trade secrets exist. InteliClear, 978 F.3d at 657-660. At that stage, "[t]he plaintiff should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." Id. at 658. Thus, Plaintiffs' expert declaration does not support their position that they have completed their trade secret disclosures as to all their asserted trade secrets.

However, this shortcoming does not mean that Plaintiffs are obligated to complete their responses to Moving Defendants' contention interrogatories (Interrogatories No. 1) at this time. The Court is not persuaded that the contention interrogatories, at this stage, meaningfully advance the case. See In re Convergent Techs., 108 F.R.D. at 338–39. The contention interrogatories are directed to each and every alleged trade secret. The parties agree, however, that only a subset of the alleged trade secrets will ultimately go to trial. The contention interrogatories will not meaningfully clarify key issues, narrow the scope of the dispute, or facilitate early settlement or dispositive motion practice. Other discovery tools are better suited to reveal which alleged trade secrets Noah Medical has likely misappropriated and which trade secrets may not have been used by Noah Medical because they remained on the personal devices of the individuals without ever being used. That information is in Defendants' possession. Yet Noah Medical and the individual defendants, apart from Romo, had not begun its discovery productions as of August 24, 2023. More progress must be made on discovery before Plaintiffs are reasonably required to supplement their responses to Interrogatories No. 1. After Defendants, in particular Noah Medical, begin and

make significant progress on their productions, the alleged trade secrets that lack merit will very likely become more apparent, and then Interrogatories Nos. 1 will be more useful to clarify or narrow the issues in the case. Moreover, requiring a further response regarding the 78 distinct trade secrets against the original defendants would be disproportionate to the present needs of the case.

The limited discussion in Attia v. Google LLC, No. 5:17-cv-06037, 2018 U.S. Dist. LEXIS 84196 (N.D. Cal. Jan. 2, 2018) does not counsel a different result. The decision, as reported, does not address the extent to which document production and other discovery had been completed. Here, there are a substantial number of asserted trade secrets, but in Attia, the number of alleged trade secrets may be substantially smaller. Id. at *6. There is insufficient information in Attia to determine that this is a comparable case, and that supplementation of Plaintiffs' interrogatory responses should be similarly ordered.

After the initial hearing on the discovery disputes, the parties submitted a proposed discovery schedule (ECF No. 93 at 5) that illustrated a middle path between Plaintiffs' claim that their responses to the contention interrogatories were already complete, and Moving Defendants' claim that they are immediately entitled to specific and precise trade secret disclosures early in the discovery process. In this case, sequencing discovery such that Plaintiffs are required to supplement their responses to the contention interrogatories only after sufficient discovery has been completed does not mean that the Court is necessarily adjudicating the merits question of misappropriation, as Moving Defendants contend. The process of winnowing which trade secrets that will advance and must be identified with sufficient particularity is consistent with the discovery process that the Ninth Circuit has endorsed. In trade secret cases "discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized identification." InteliClear, 978 F.3d at 662.

Moving Defendants' request for relief is **GRANTED** and **DENIED** in part. No later than December 15, 2023, thirty days after the deadline for substantial production, Plaintiffs shall supplement their responses to Moving Defendants' Interrogatories No. 1 for the trade secrets Plaintiffs propose to take to trial. See ECF No. 97.

## V. JOINT STATEMENT NO. 2

Moving Defendants request an order requiring Plaintiffs to respond to their Interrogatories Nos. 2 to 7. The interrogatories seek information related to elements of Plaintiffs' DTSA cause of action. Each interrogatory asks for information specific to each alleged trade secret—who created each trade secret, each third party to whom each trade secret has been delivered, how each Defendant acquired it, how each Defendant used or disclosed it, and what, if anything, Plaintiffs contend each Defendant possesses and has not returned. The parties disagree as to whether the interrogatories contain multiple subparts, given that the interrogatories seek information for each of the trade secrets.

Plaintiffs have the more persuasive position that interrogatories seeking information about "each" of multiple things comprise discrete subparts for each of those things. However, the Court recognizes that Moving Defendants may have good cause to seek additional interrogatories beyond the 25-interrogatory limit set forth in Rule 33 of the Federal Rules of Procedure. The challenge is that, at this stage of the litigation, it is unclear which and how many trade secrets Plaintiffs will take to trial. Accordingly, Moving Defendants' request for relief in Joint Statement No. 2 is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs shall respond to Interrogatories Nos. 2 through 7 to the extent that they know, at this stage of the litigation, that certain trade secrets will be pursued. At the parties' next meet and confer regarding discovery, Plaintiffs shall indicate to Defendants which trade secrets that they are certain to pursue in this litigation, and, with respect to those trade secrets, the parties shall plan a schedule for Plaintiffs to respond to Interrogatories 2 to 7, and, if necessary, whether the parties are willing to stipulate to additional written interrogatories beyond the ordinary limit.

//
//
//
//
//
//

VI. **CONCLUSION**

For the forgoing reasons, Moving Defendants' requests for relief in Joint Statements Nos. 1 and 2 is **GRANTED** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated:  9/12/2023

LISA J. CISNEROS
United States Magistrate Judge