UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURIS HEALTH, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NOAH MEDICAL CORPORATION, et al.,<br><br>    Defendants. | Case No. 22-cv-08073-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 57 |

Before the Court is a Motion to Dismiss from Defendants Noah Medical Corporation, Kenneth Nip, Enrique Romo, Diana Cardona Ujueta, Mouslim Tatarkhanov, and Maziyar Keshtgar. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for July 22, 2023, was vacated. *See* Civil L.R. 7-6. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby rules as follows.

## BACKGROUND

Plaintiffs make the following allegations in the amended complaint, all of which are taken as true for purposes of the motion to dismiss. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Plaintiff Auris Health, Inc. ("Auris") is a developer of medical robotics technology. ECF 36, First Amended Complaint ("FAC") ¶¶ 2, 52. Plaintiff Verb Surgical Inc. ("Verb") is a developer of medical robotics technology. FAC ¶¶ 3, 53. Verb is an affiliate of Auris's parent corporation, which began to "operate together" in early 2020. FAC ¶¶ 4, 45, 50. Plaintiff Cilag GmbH International ("Cilag") owns trade secrets in certain medical robotics technologies developed by Auris and Verb. FAC ¶¶ 46-50. Auris uses trade secrets from itself, Cilag, and Verb in its business. FAC ¶ 50.

Defendant Noah Medical Corporation ("Noah") is a competitor in the field of medical robotics development. Dr. Jian Zhang, who founded Noah in 2018 and serves as its CEO, is a former Auris executive. FAC ¶¶ 78-79. Defendants Enrique Romo, Diana Cardona Ujueta, Kenneth Nip, Leobardo Centeno Contreras, Mouslim Tatarkhanov, Maziyar Keshtgar, and Sarika Pandhare are all former Auris employees who left between 2019 and 2021. After departing Auris, Romo, Nip, and Keshtgar each joined Noah in 2020. The others joined Auris during 2021. FAC ¶¶ 98, 121, 135, 178, 191, 211. Neither of the other two Plaintiffs – Cilag and Verb – employed any Defendant.

### A. Factual Background

Romo exfiltrated a trove of Plaintiffs' confidential and trade secret information just before he left Auris by (1) emailing the information to his personal email account (FAC ¶ 89); (2) using his personal cellphone to take dozens of screenshots of confidential program updates, product forecasts, and notes from prototype testing (¶ 95); and (3) connecting personal USB devices to his Auris laptop to copy the information (¶¶ 90, 92-93). Further, when Noah filed a 2020 patent application listing Romo as the inventor (the "Noah-Romo Provisional"), the patent document contained Auris trade secrets. FAC ¶ 100 ("The disclosures in the Noah-Romo Provisional include trade secrets related to Auris endoscopy systems developed during Romo's tenure at Auris."). And when Noah filed a June 2022 patent application listing Mr. Romo as an inventor, that separate patent document also contained Auris trade secrets. *See* FAC ¶¶ 20, 84-88.

Each of the individual Defendants is accused of taking files when leaving Auris Health or retaining them thereafter. FAC ¶¶ 108, 126, 137, 167, 181, 195, 212. Like Romo, Cardona exfiltrated a carefully gathered collection of Plaintiffs' confidential and trade secret information. She did so by connecting a personal external hard drive to her Auris laptop and by emailing information to her personal email account. FAC ¶¶ 113-114, 117. Cardona also accessed the external hard drive containing Auris's trade secrets multiple times after leaving Auris. FAC ¶¶ 122-23.

Defendants Tatarkhanov, Keshtgar, and Pandhare targeted, among other things, information in Auris's Agile Product Lifecycle Management System (the "Agile System"). FAC

¶¶ 13, 174, 189, 205.  The Agile System contains purportedly confidential and trade secret documents related to FDA regulatory compliance and approval, manufacturing instructions, and standard operating procedures.  FAC ¶¶ 174, 189, 205.  Tatarkhanov resigned from Auris on February 19, 2021, and the next business day, February 22, downloaded 60 software quality management documents from the Agile System within 25 minutes.  FAC ¶ 176.  His download activity was unlike his prior usage of the system.  *Id.*  Three hours later, Tatarkhanov erased the contents of one of his hard drives on his Auris-issued computer by reformatting it.  *Id.*  On March 5, 2021, his last day at Auris, Tatarkhanov erased another Auris hard drive by reformatting it.  *Id.*  Eighteen months later, in August 2022, Tatarkhanov revealed that he had Auris files in his personal cloud-based storage accounts and his personal computer.  FAC ¶ 179.  These files included confidential presentations about Plaintiffs' visualization technology.  FAC ¶ 13.  Tatarkhanov returned these files but not the 60 software quality management documents.  FAC ¶ 179.

Keshtgar's last day at Auris was November 19, 2020, and on November 16 and 18, he downloaded from the Agile System dozens of documents related to the design, manufacturing, and testing of Auris's endoscopes.  FAC ¶ 189.  Less than a week before he resigned, he emailed to his personal email a photograph containing trade secrets related to Auris's urology product.  FAC ¶ 193.  In combination, the photograph and the downloaded documents provided specific instructions for testing Auris's urology endoscope and efficiently calibrating the urology robot.  *Id.*  Two years later, on November 1, 2022, Keshtgar informed Auris that he had passively retained emails from his time at Auris.  FAC ¶ 192.  Two weeks later he stated that he also had Auris documents in his Google Drive, including an Auris spreadsheet containing confidential information about Auris's urology endoscope.  *Id.*  Keshtgar did not explain how he came to possess the spreadsheet.  FAC ¶ 193.  Keshtgar returned some of the retained materials, but he did not return the dozens of documents he downloaded from the Agile System.  FAC ¶¶ 192, 195.

Noah Medical Corporation and the three original Defendants, Romo, Cardona, and Nip, have stolen at least 26,000 documents comprising 81 gigabytes of data from Plaintiffs to date.  FAC ¶ 1.  The four Defendants added to the FAC, Centeno, Tatarkhanov, Keshtgar, and Pandhare,

1 have taken a similar amount of data. *Id.*

**B.     Procedural History**

In December 2022, Plaintiffs filed their original complaint asserting, among others, claims under the Defend Trade Secrets Act ("DTSA") against Noah and three individuals: Romo, Cardona, and Nip. ECF 1. Plaintiffs also alleged (1) breach of contract claims against the individual defendants, and (2) state law tortious interference and statutory unfair competition claims against Noah. On February 24, 2023, Plaintiffs added DTSA and contract claims against Centeno, Tatarkhanov, Keshtgar, and Pandhare. ECF 36; *see also* ECF 37-3 (unredacted FAC, filed under seal). The FAC advances the following causes of action: (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, Title 18 U.S.C. § 1836 et seq. (all Plaintiffs against all Defendants); (2) breach of written contract (Auris against Romo); (3) tortious interference with contract (Auris against Noah); (4) breach of written contract (Auris against Cardona); (5) Breach of written contract (Auris against Nip); (6) California statutory unfair competition (Cal. Bus. & Prof Code § 17200) (Auris against Noah); (7) breach of written contract (Auris against Centeno); (8) breach of written contract (Auris against Tatarkhanov); (9) breach of written contract (Auris against Keshtgar); and (1) breach of written contract (Auris against Pandhare).

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as

true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 1962)).

**DISCUSSION**

Defendants' Motion to Dismiss advances piecemeal challenges to certain claims. The Motion does not ultimately seek dismissal of all claims or all Defendants. Defendants make the following arguments:

- (1) Plaintiffs fail to state DTSA and contract claims against Tatarkhanov and Keshtgar because they do not allege that those individuals took any documents away from Auris;
- (2) Plaintiffs fail to state valid "information and belief" allegations against Defendants Romo and Cardona because Plaintiffs acknowledge that they returned trade secret files;
- (3) Plaintiffs' injunctive relief claims fail because they only complain of past acts, not ongoing or future harm, and they seek impermissible and vague "obey the law" injunctions;
- (4) Plaintiffs fail to state a claim that their trade secrets were implicated; and
- (5) the California UTSA preempts the tortious interference and UCL claims.

The Court considers Defendants' arguments in turn.

### A. Failure to State DTSA and Contract Claims against Tatarkhanov and Keshtgar

Defendants argue that Plaintiffs improperly assert DTSA and contract claims against two new individual Defendants – Tatarkhanov and Keshtgar – without alleging that either of them actually took any documents away from Auris's premises. Plaintiffs counter that they have pleaded specific facts to adequately state a claim for Tatarkhanov's and Keshtgar's misappropriation of trade secrets and breaches of contract because the allegations are supported by circumstantial evidence, not merely information and belief. Further, Plaintiffs contend, even the information and belief allegations that defendants call conclusory are properly pled under *Twombly*, because the allegations (1) are supported by factual information that makes them plausible, and (2) relate to facts peculiarly in the possession of these two individual defendants and Noah. Finally, Plaintiffs argue they have sufficiently pleaded breach of contract claims against both Tatarkhanov and Keshtgar because both Defendants were contractually required to return confidential information upon termination of their Auris employment.

A trade-secret plaintiff must show that (1) the plaintiff owned a trade secret, (2) the defendant misappropriated a trade secret, and (3) the defendant's misappropriation damaged the plaintiff. *See* 18 U.S.C. § 1836. "[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). When it comes to proving a case, the general rule in federal court is that direct and circumstantial evidence are treated alike; circumstantial evidence is not, by its nature, any weaker than direct evidence. *See, e.g., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). Reliance on circumstantial evidence can be especially warranted in showing trade secret misappropriation:

> misappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place. Against this often delicate construction of circumstantial evidence there frequently must be balanced defendants and defendants' witnesses who directly deny everything.

*Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2021 WL 8820180, at *10

(N.D. Cal. Aug. 24, 2021) (citation omitted); *see also UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007) ("Circumstantial evidence is particularly appropriate in trade secret cases.").

The Ninth Circuit has clarified that the *Iqbal*/*Twombly* plausibility standard permits allegations on information and belief where: (1) "the facts are peculiarly within the possession and control of the defendants"; or (2) "the belief is based on factual information that makes the inference or culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citing *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)).  Nevertheless, "[a] complaint will not survive a motion to dismiss if it tenders naked assertions devoid of further factual enhancement." *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (holding that allegations made on information and belief, in the absence of facts to provide context, were insufficient to avoid dismissal).

Here, Defendants' attacks the on information and belief allegations against Tatarkhanov are misleading because they attempt to isolate these allegations from their greater factual context. Defendants contend that the allegations fall short of establishing that Tatarkhanov misappropriated trade secrets because his downloads never went outside an Auris-owned device or account, but Plaintiffs have presented several factual allegations that make the inference of misappropriation plausible.  In the span of 25 minutes, Tatakhanov downloaded over 60 software quality management documents from Auris's Agile System the business day after he resigned.  FAC ¶ 176.  Tatarkhanov's download activity that day was unlike any of his prior usage of the Agile System. *Id.* ¶¶ 13, 176.  Within three hours of downloading the information, Tatarkhanov erased the contents of the hard drive of his Auris computer by reformatting the drive. *Id.*  On his last day at Auris, Tatarkhanov erased the contents of an additional Auris hard drive by reformatting it. *Id.* He reformatted those hard drives without permission, without informing anyone within Auris, and without a legitimate business purpose. *Id.*  When Auris asked Tatarkhanov to explain why he reformatted his hard drives, Tatarkhanov did not respond. *Id.* ¶ 185.  Finally, Tatarkhanov admitted 18 months after leaving Auris that he had Auris documents in his personal cloud-storage accounts and computer. *Id.* ¶ 179.  These factual allegations, including the circumstantial

7

evidence Plaintiffs do not present on "information and belief," support those "information and belief" allegations that Tatarkhanov exfiltrated the trade secret documents and stored them on his personal storage accounts and computer.

Defendants' attack on the information and belief allegations against Keshtgar suffer from the same flawed approach. Plaintiffs allege that Keshtgar downloaded dozens of documents related to design, manufacturing, and testing of Auris's endoscopes from the Agile System just days before he left Auris. FAC ¶ 189. He had no legitimate business purpose to download those documents during his last week at Auris. *Id.* ¶ 190. Two years later, Keshtgar admitted that he "passively retained" Auris documents in his personal email and Google Drive account. *Id.* ¶ 192. Plaintiffs plausibly allege that there was no "passive retention"; rather, Keshtgar actively sent emails containing Auris proprietary and confidential information to his personal email account. *Id.* ¶ 193. They support this allegation with factual allegations, including that Keshtgar emailed a photograph that contained undisclosed and trade secret aspects of Auris's ureteroscope a week before he resigned. *Id.* That photograph, in combination with the manufacturing process instructions that Keshtgar had downloaded from the Agile System, described Auris's setup and procedure for calibrating and testing a ureteroscope, and that information would be useful to Noah in developing urology applications. *Id.* ¶¶ 193-94. Finally, Keshtgar also admitted that he had a confidential Auris spreadsheet in his personal Google Drive account but provided no explanation how he came to possess it. *Id.*

The factual allegations recited above show a sequence of events contemporaneous with and subsequent to Tatarkhanov's and Keshtgar's departures from Auris that supports a reasonable inference that both of them exfiltrated documents from Auris's Agile System to their personal accounts and devices to use in their new jobs at Noah. The inference is particularly reasonable because Tatarkhanov and Keshtgar transmitted other Auris confidential and/or trade secret documents outside of Auris: Tatarkhanov to his personal computer and cloud-based storage accounts, and Keshtgar to his personal email and cloud-based storage accounts. *Id.* ¶¶ 179, 192-93. Such an inference is additionally supported by the suspicious nature of the two Defendants' download activity, unlike their prior usage, soon after submitting their resignations, which they

sought to cover up through erasing and/or reformatting hard drives. Plaintiffs' allegations may not encompass every specific aspect of Tatarkhanov's and Keshtgar's alleged malfeasance, but the factual allegations reasonably support an inference that these two Defendants were involved in specific instances of misappropriation. *See Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2021 WL 8820180, at *15 (N.D. Cal. Aug. 24, 2021) (considering pleading of misappropriation claims and a defendant's cherrypicked attack on information and belief allegations). Taken together and in sequence, Auris has alleged plausible claims for trade secret misappropriation against Tatarkhanov and Keshtgar, and the Court therefore denies Defendants' motion to dismiss those claims.

To the extent Defendants aver that Plaintiffs fail to state claims for breach of contract against Tatrkhanov and Keshtgar, those contentions fail on similar grounds. Both defendants were contractually required to (1) return upon termination of their Auris employment all property (including confidential information) belonging to Plaintiffs and (2) not retain any confidential information belonging to Plaintiffs. FAC ¶¶ 173, 187. Tatarkhanov admitted that he retained confidential Auris materials in his personal cloud storage accounts and devices for at least 18 months after he left Auris. *Id.* ¶ 179. Likewise, Keshtgar admitted that he retained confidential Auris materials in his personal email and cloud storage accounts for at least two years after he left Auris. *Id.* ¶ 192. Given these admissions, as well as the plausible allegations of misappropriation discussed above that would violate the contractual terms, Plaintiffs state a plausible claim for breach of contract. The Court therefore denies Defendants' motion to dismiss those claims.

**B.  Allegations on "Information and Belief" against Romo and Cardona**

Defendants also challenge the sufficiency of the allegations made on "information and belief" against Romo and Cardona, arguing in substantial part that the allegations fail to state a claim because, while Romo and Cardona stored or transferred files onto personal devices or accounts (FAC ¶¶ 88-96, 112-22), Plaintiffs acknowledge that Romo and Cardona "returned" files to Plaintiffs (¶¶ 106, 124). Plaintiffs counter that Cardona's and Romo's unverified claims that they returned the subject files are insufficient to moot the DTSA and breach of contract claims against them.

9

1  Defendants' contentions must fail because they avoid full consideration of the FAC,
2  instead selectively reading portions in isolation. The FAC makes clear that Cardona and Romo
3  returned the subject files through their counsel and have not returned the devices to which they
4  originally downloaded Plaintiffs' trade secrets. *See* FAC ¶¶ 19, 108, 124. This suggests that,
5  contrary to Defendants' manufactured pleading defect, Plaintiffs have not verified that all their
6  trade secrets were returned by Cardona and Romo. Even accepting that Cardona and Romo
7  returned trade secret documents to Auris, Plaintiffs allege that Defendants Cardona, Romo, and
8  Noah already used the trade secrets to benefit Noah's business. FAC ¶¶ 109, 127, 238. The
9  alleged use of such trade secrets would not be mitigated or eliminated by the return of the
10 documents because it is the incorporation of such information into Noah's operations that creates
11 Plaintiffs' alleged ongoing harm. Further, Defendants cannot establish that returning computer
12 files means that Cardona and Romo do not continue to have access to some usable form of the
13 trade secret information. *See East West Bank v. Shanker*, Case No. 20-cv-07364-WHO, 2021 WL
14 3112452, at *13 (N.D. Cal. July 22, 2021) ("To find no likelihood of irreparable harm after a
15 defendant returns the information it used to misappropriate the trade secrets would render laws
16 . . . , which seek to protect trade secrets, moot.").

17 Finally, Plaintiffs' allegations made on information and belief are also supported by
18 sufficient factual allegations. The allegations that Defendants Cardona and Romo stored or
19 transferred files onto personal devices or accounts (FAC ¶¶ 88-96, 112-22) are supported by
20 sufficient factual context to establish their plausibility at this stage. In light of the surrounding
21 context of Cardona's and Romo's additional conduct, including their departure from Auris and
22 hiring by Noah in positions similar to the ones they held at Auris, Plaintiffs plausibly plead
23 misappropriation and they need not do more at this stage.

24 **C.    Requests for Injunctive Relief**

25 Defendants seek dismissal of Plaintiffs' claims for injunctive relief on multiple fronts,
26 considered in turn below.

27 //

28 //

### 1. Defects in the Prayer for Relief Support Dismissal of Claims

Defendants suggest that the Court should dismiss claims because of shortcomings in the prayer for relief. Defendants attack the wrong portion of the pleading. The appropriateness of the injunctive relief sought in Plaintiffs' Prayer for Relief does not resolve the question of whether Plaintiffs state plausible claims for DTSA and breach of contract pursuant to Rule 12(b)(6), the subject of the instant motion.

> The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose. . . . Thus, the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.

Wright & Miller, 5 Federal Practice and Procedure (4th ed.) § 1255, Demand for Judgment – In General. In consideration of the instant motion, Plaintiffs' request for what Defendants consider an improper injunction does not properly factor in the assessment of the sufficiency of Plaintiffs' pleading under Rule 8. Defendants' argument against the injunctive relief relies in substantial part on the insufficiency of the substantive allegations discussed separately. None of the authority cited by Defendants stands for the proposition that a claim should be dismissed at the pleading stage because the injunctive relief sought is somehow improper. Accordingly, the Court will not dismiss the claims on this basis.

### 2. Whether Plaintiffs' Requested Injunctive Relief is Sufficiently Future-Facing

Defendants argue that Plaintiffs' claims for injunctive relief against the individual Defendants fail because they only complain of past acts, not ongoing or future harm. Plaintiffs counter that the alleged defects in the prayer for relief do not support dismissal of claims, especially where Defendants cite no authority for the premise that DTSA claims fail as a matter of law at the pleading stage because of the purported deficiency of requested injunctions. Additionally, Plaintiffs aver that the requested injunctive relief is sufficiently future-facing and tailored to the conduct alleged. In light of the allegations here, the Court agrees with Plaintiffs.

Courts have considered allegations that an employee downloaded trade secret material to his or her personal devices prior to leaving employment to work for a competitor, combined with

11

allegations that the employee had signed agreements with provisions for confidentiality, to support the former employers' claim for injunctive relief. *See, e.g.*, *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016); *see also Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *4 (N.D. Cal. Mar. 15, 2018).

Plaintiffs allege that Defendants engaged in similar conduct. Plaintiffs aver that Defendants intentionally took and have not returned all of Plaintiffs' trade secrets, and that Defendants have used and continue to use the trade secrets for the benefit of a competitor. FAC ¶¶ 106, 108 (Romo); ¶¶ 125-27 (Cardona); ¶¶ 132-41 (Nip); ¶¶ 151-59, 162, 167-69 (Centeno); ¶¶ 176-85 (Tatarkhanov); ¶¶ 189-99 (Keshtgar); ¶¶ 205-13 (Pandhare); ¶¶ 238-40 (all). As discussed above, Defendants' implication that the taking of trade secrets is mooted by the return of certain files does not consider the full scope of the allegations against them. The FAC includes specific allegations that Defendants did not return all the trade secrets in their possession, posing an ongoing risk of misappropriation through their use by a competitor. *See, e.g.*, FAC ¶ 239. Plaintiffs allege, for example, "On information and belief, Centeno has failed to return all of Plaintiffs' files in his possession," (FAC ¶ 169) and "On information and belief, Centeno and Noah have used Plaintiffs' trade secrets in Noah's business" (FAC ¶ 171). These allegations are much more than the failure to "return 'devices' in which Plaintiffs allege no ownership interest" that Defendants glean from Plaintiffs' pleading, and they do not constitute throwaway contentions. These allegations about trade secret use are combined with allegations that the individual Defendants had signed confidentiality agreements that expressly allow either side to petition for injunctive relief in case of breach. *See, e.g.*, FAC ¶¶ 144-146 (Centeno's confidentiality agreement). These allegations are sufficient to support injunctive relief of the sort granted in other DTSA cases. Defendants' narrow reading of the operative complaint is too strained, and they are ultimately incorrect that the injunctive relief sought is insufficiently forward-looking.

   **3. Whether Plaintiffs Seek an Improper "Obey the Law" Injunction**

Defendants additionally assert that Plaintiffs' claims fail because courts generally do not issue so-called "obey the law" injunctions of the type Plaintiffs seek here. *See, e.g.*, *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1284 (N.D. Cal. 2012) ("Broad language in

an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief." (citation omitted)). Plaintiffs argue that their requested injunctive relief is sufficiently specific, and Defendants' argument that Plaintiffs seek an impermissible "obey the law" injunction is misleading.

Defendants' attack on so-called "obey the law" injunctions does not follow the law of this circuit. "Obey the law" injunctions are not categorically barred in the Ninth Circuit, as Defendants suggest, and injunctions are instead required to provide sufficient specificity to give fair notice of enjoined conduct. *SEC v. Murphy*, 50 F.4th 832, 852 n.9 (9th Cir. 2022) (the Ninth Circuit has "not adopted a rule against 'obey the law' injunctions per se"). Even accepting Defendants' mischaracterization of Plaintiffs' prayer for an injunction, and even accepting that "obey-the-law" injunctions may generally be disfavored, Plaintiffs' claims need not be dismissed at the pleading stage on the basis that the relief requested is inappropriate.

**D.     Sufficiency of Pleading for Plaintiffs Verb and Cliag**

Defendants Nip, Centeno, Tatarkhanov, Keshtgar, and Pandhare all move to dismiss the DTSA claims of Plaintiffs Cilag and Verb against them on the ground that each Plaintiff must specify a one-to-one match between each asserted trade secret and each asserted act of misappropriation by each defendant. But Defendants provide no authority requiring such specificity at the pleading stage.[1] As in *Masimo Corp. v. Apple Inc.*, No. SACV2048JVSJDEX, 2021 WL 925885 (C.D. Cal. Jan. 6, 2021), "[Defendant] has cited no law requiring that plaintiffs suing together specify which of them owns a particular trade secret." *Id.* at *6. This Court follows the same path and accordingly denies the Motion to Dismiss.

**E.     Supersession by California Uniform Trade Secrets Act**

Defendants argue that the California Uniform Trade Secrets Act ("CUTSA") has preclusive effect over other state law claims even if it is not specifically pleaded. The CUTSA

---

[1] Defendants' challenge again suffers from a piecemeal review of the FAC, as Plaintiffs have pleaded with particularity whether a trade secret is owned by all the Plaintiffs, *see, e.g.*, FAC ¶¶ 65, 70, 72, 76, or by a specific Plaintiff, *see, e.g.*, *id.* ¶ 67 (Cilag), ¶¶ 63, 74 (Auris), ¶ 114 (Verb). Additionally, Plaintiffs have also pleaded examples of specific trade secrets, taken by specific Defendants, and owned by a specific Plaintiff. *See, e.g.*, *id.* ¶ 114.

13

accordingly supersedes Auris's claim for tortious inference with contract against Noah Medical (Count 3), Defendants argue, because Auris alleges that Noah interfered with Auris's invention assignment contract with Romo by misusing the very same information that Auris claims elsewhere in the FAC to constitute trade secrets. Plaintiffs assert that Auris's tortious interference and UCL claims are not superseded by CUTSA because those claims are based on Romo's obligations that are separate from his confidentiality obligations to Auris.

"Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. . . . It therefore supersedes claims—including [UCL] claims—based on the same nucleus of facts as trade secret misappropriation." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citations omitted); Cal. Civ. Code. § 3426.7. However, supersession does not affect "contractual remedies" and "civil remedies" "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011).

"California courts have ruled that 'CUTSA's "comprehensive structure and breadth" suggests a legislative intent to occupy the field,' and that CUTSA preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 (N.D. Cal. 2014) (citing *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954-58 (2009)). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC*, 256 F. Supp. 3d at 1062. Put another way, "[t]o survive preemption, [a plaintiff's] claims must 'allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim.'" *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) (quoting *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012)).

Here, Plaintiffs' tortious interference claims significantly overlap with their trade secret misappropriation claims. First, in its DTSA trade secret claim, Auris Health alleges that "[n]either

14

Romo nor Noah invented the system disclosed in the Noah-Romo Provisional; instead, it was invented at Auris, stolen by Romo, and used by Noah in the Noah-Romo Provisional. Romo knew, on or before June 1, 2020, that the Noah-Romo Provisional was based on Auris trade secrets." FAC ¶¶ 102-03. Next, in its tortious interference cause of action, Auris alleges that Noah wrongfully interfered with Romo's employment and IP assignment contract with Auris by "caus[ing] him to breach his agreement with Auris" by "filing a patent application claiming Auris Health's innovations as an invention of Noah." FAC ¶ 255. The tortious interference with contract claim is clearly based on the same nucleus of facts as the trade secret misappropriation, particularly the allegations that Romo took trade secret material with him and that Noah used it. This tortious interference claim is not a breach of contract claim that would fall squarely within CUTSA's carve out. In sum, both the trade secret misappropriation and the tortious interference claims allege that Noah used Romo to misappropriate trade secrets. Thus, "stripped of facts supporting trade secret misappropriation," the remaining allegations do not constitute any independent injury and thus are superseded by CUTSA. *See Waymo LLC*, 256 F. Supp. 3d at 1062. The Court therefore dismisses Plaintiffs' third cause of action, Auris' claim of tortious interference with contract against Noah.

Auris's Section UCL claim against Noah is entirely derivative of the tortious interference claim. FAC ¶¶ 274-79. Accordingly, the Court also dismisses Plaintiffs' sixth cause of action.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss. The third and sixth causes of action are DISMISSED as superseded and may not be amended. Defendants must file an answer to the remaining claims no later than December 4, 2023.

**IT IS SO ORDERED.**

Dated: November 3, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

15