United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AURIS HEALTH, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NOAH MEDICAL CORPORATION, et al.,<br><br>Defendants. | Case No.  22-cv-08073-AMO   (LJC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART JOINT DISCOVERY LETTER BRIEF; GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED** |

Pending before the Court is the parties' Joint Discovery Letter Brief.  ECF No. 118.  The parties primarily dispute how much of Defendant Noah Medical Corporation's (Noah) proprietary source code Plaintiffs Auris Health, Inc. (Auris), Verb Surgical Inc. (Verb), and Cilag GmbH International (Cilag) (collectively, Plaintiffs) should be allowed to access and review during discovery.  The Court held a hearing on February 2, 2024.  ECF No. 123.  Having carefully considered the parties' arguments and relevant authority, and for the reasons stated below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the relief requested in the Joint Discovery Letter Brief.[1]

## I.      BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case.  Request

---

[1] In connection with the Joint Discovery Letter Brief, Plaintiffs filed an Administrative Motion to File Under Seal, seeking to maintain under seal portions of the Joint Discovery Letter Brief that referenced details about Plaintiffs' trade secrets.  ECF No. 119.  The Court granted the motion on the record at the hearing on February 2, 2024, for good cause shown.  ECF No. 123.  Plaintiffs also filed an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed.  ECF No. 120.  Noah filed a statement in support of sealing as required by Civil Local Rule 79-5(f).  ECF No. 122.  The material in question referenced Noah's commercially sensitive confidential information, specifically, source code parameters for a non-public instrument being developed by Noah.  *See* ECF No. 122-1.  For good cause shown, the sealing motion at ECF No. 120 is hereby **GRANTED**.

for Production (RFP) No. 20, which was propounded by Plaintiffs, requests: "All software, firmware and tests *written or modified by any Individual Defendant* for Noah Medical."  ECF No. 118 at 2 (emphasis in original).[2]  Plaintiffs assert all of their source code-related trade secrets against Noah (*id*. at 2), but Diana Cardona Ujueta is the only individual Defendant accused of taking Plaintiffs' source code.  *See* ECF No. 36 (First Amended Complaint, or FAC) ¶¶ 113–19. Plaintiffs allege that Cardona Ujueta downloaded a large number of documents from her Auris-issued laptop, which included source code files, onto a personal external hard drive from April 2021 to when she left Auris in August 2021.  *Id.*  Cardona Ujueta joined Noah in September 2021 as an "R&I Senior Robotics and Controls Engineer."  *Id.* ¶ 121.  There is forensic evidence indicating that she accessed some of these documents and files in September 2021.  *Id.* ¶¶ 122–23. Noah does not dispute the fact that Cardona Ujueta took Plaintiffs' documents, including source code files, with her after she left Auris.  ECF No. 118 at 4.

However, Noah points out that in a verified interrogatory response, Cardona Ujueta stated that she did not transfer Plaintiffs' information to Noah.  *Id.*  And although Noah searched for these source code files in its systems and Cardona Ujueta's Noah-issued laptop—using agreed-upon search terms negotiated by the parties—no responsive documents were found by Noah, and nothing was produced.  *Id.*  Noah claims that Cardona Ujueta is not a software engineer and did not write source code for Plaintiffs or for Noah.  *Id.* at 4.  Noah concedes, however, that one of her job responsibilities is to "test hardware using code written by others, to see if things are working correctly."  *Id.*

Individual Defendant Mouslim Tatarkhanov was Noah's Head of Research and Innovation Software.  FAC ¶ 178.  Tatarkhanov did write source code for Noah, specifically, code for motion control of prototype devices.  ECF No. 118 at 3, 5.  And Tatarkhanov also worked on software and firmware related to Auris's products during his time with the company.  FAC ¶ 175.  But Plaintiffs do not assert any source-code related trade secrets against Tatarkhanov, which they claim is the result of Tatarkhanov reformatting his hard drives right before leaving Auris, meaning there is no

---

[2] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system.

United States District Court
Northern District of California

forensic evidence that he took any source code files, as there is with Cardona Ujueta. ECF No. 118 at 3. Specifically, Plaintiffs allege that on February 22, 2021, the next business day after he resigned from Auris, Tatarkhanov downloaded over 60 Software Quality Management Documents from the Agile System, and three hours after this download completed, he erased the contents of one of his hard drives by reformatting that drive. FAC ¶ 176. On March 5, 2021, his last day at Auris, Tatarkhanov allegedly erased the contents of another Auris hard drive by reformatting the drive. *Id.* Plaintiffs claim that Tatarkhanov reformatted his hard drives without Auris's permission, although Noah contends that he spoke to an IT employee before doing so, and that he "provided the names of employees who were aware of it or had reformatted their own laptops when leaving." ECF No. 118 at 3, 5. At the hearing, Noah admitted that it does not know the name of the IT employee that Tatarkhanov spoke to, and that the employees referenced in the Joint Discovery Letter Brief were Tatarkhanov's subordinates.

Nevertheless, Tatarkhanov has told Plaintiffs that he only saved the files he downloaded to his Auris-issued laptop, not to an external device or account. *Id.* at 5. Like Cardona Ujueta, Tatarkhanov has served a verified discovery response stating that he did not transfer Plaintiffs' information to Noah. *Id.* at 5. And as with Cardona Ujueta, Noah ran search terms in connection with Tatarkhanov—including terms with the file names of the 60 files Plaintiffs accuse Tatarkhanov of exfiltrating—and found no responsive documents to produce. *Id.*

Apart from the particulars related to the parties' present discovery dispute, the Court notes that there is a Stipulated Protective Order in this case. ECF No. 79. Section 7.3 of the Protective Order sets rules for the disclosure of Highly Confidential – Source Code information and items. *Id.* at 10–11.

## II.      LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit."  The right to discovery, even plainly relevant discovery, is not limitless.  Rule 26 allows the Court to deny discovery where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  It is "[t]he [C]ourt's responsibility, using all the information provided by the parties, [ ] to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."  Fed. R. Civ. P. 26(b), Advisory Committee Notes (2015 Amendment).

### III.    DISCUSSION

Plaintiffs want a forensic neutral firm to "identify source code files, firmware, and tests authored or modified by any Individual Defendant."  ECF No. 118 at 4.  But in the Joint Discovery Letter Brief, Plaintiffs focus only on Defendants Cardona Ujeta and Tatarkhanov.  *Id.* at 2–3.  Noah believes Plaintiffs to be narrowing their source code request (*id.* at 4), although Plaintiffs state that this is "false" and that they have never altered RFP No. 20.  *Id.* at 6.

In trade secret misappropriation cases where source code discovery is sought, "[a]s a starting point, the party alleging trade secret misappropriation should have identified what alleged trade secret was misappropriated."  Peter S. Menell et al, *Trade Secret Case Management Judicial Guide*, Chapter 6.7.2, Federal Judicial Center (2023); *see also Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 6883929, at *1 (N.D. Cal. Oct. 19, 2017) (noting that "[t]here is nothing improper about requiring Waymo to make some showing" that a witness "actually took its source code in the first place before attempting to use [them] as an excuse for pawing through Uber's source code without limitation.")  Here, Plaintiffs' source code-related trade secrets are only asserted against Cardona Ujeta, although they are making the argument that Cardona Ujeta somehow may have colluded with Tatarkhanov to misappropriate the source code she took.  But Plaintiffs have otherwise made no showing nor presented any argument to the Court as to any other individual Defendant having potentially misappropriated stolen source code.  Thus,

4

United States District Court
Northern District of California

1  Plaintiffs' request to "paw" through Noah's source code for anything authored or modified by any

2  Individual Defendant is **DENIED**.

3       As to Cardona Ujueta, Noah's proposed compromise is that the forensic neutral firm first

4  review her personal device to assess whether downloaded files were transferred.  ECF No. 118 at

5  5.  If (and only if) there are "signs of transfer," then Noah would work with Plaintiffs to review

6  Cardona Ujueta's interactions with GitLab—a tool used by Noah to store its software—to "show

7  that her interactions with Noah's source code storage tool only relate to her testing role."  *Id.*

8       The Court finds that Noah's proposed compromise is reasonable.  The Court denies

9  Plaintiffs' request to review source code files, firmware, and tests authored or modified by

10  Cardona Ujueta at this point in time.  The Court, however, orders the parties to engage a forensic

11  neutral firm to review Cardona Ujueta's personal device to assess whether files downloaded from

12  Auris and saved to her personal external hard drive were later transferred from her personal

13  device.  If the forensic neutral firm determines that files were transferred from the device,

14  Plaintiffs shall be permitted to review Cardona Ujueta's interactions with GitLab to examine her

15  interactions with Noah's source code storage tool.  The neutral forensic firm shall abide by the

16  terms of the Stipulated Protective Order and any other protective conditions that the parties

17  establish for its review.

18       Finally, as to Tatarkhanov, Noah argues that because "Plaintiffs made no source code

19  allegations against" him nor have they identified any such claims, "they are not entitled to have

20  Noah dump all the code he wrote for the company."  ECF No. 118 at 6.  Plaintiffs' theory as to

21  why they are entitled to Noah source code authored or modified by Tatarkhanov is essentially that

22  his "working relationship" with Cardona Ujueta "provided a further opportunity for the defendants

23  to use the indisputably stolen source code at Noah."  *Id.* at 3.  Tatarkhanov and Cardona Ujueta

24  worked on the same research and innovation team at Noah, and she allegedly began gathering

25  Plaintiffs' documents and source code files a month after Tatarkhanov joined Noah.  *Id.*  There is

26  also the fact that Tatarkhanov modified his hard drives shortly before leaving Auris, which

27  Plaintiffs claim was an attempt by Tatarkhanov to "conceal[] his misconduct."  *Id.*

28       Tatarkhanov's conduct and the allegations against him warrant discovery regarding his

United States District Court
Northern District of California

involvement in Noah's source code that may evidence misappropriation of Auris's information. Noah sets too high a bar for source code discovery and fails to recognize that by reformatting his hard drives, Tatarkhanov blocked Plaintiffs' ability to determine what files may have been transferred from those drives.  While it would be excessive to allow Plaintiffs' free-ranging review of all Noah source code created by Tatarkhanov, the Court orders the parties to engage a forensic neutral firm to identify Noah source code files, firmware and tests authored or modified by Tatarkhanov, and to share with the parties the minimal amount of information about this material necessary for the parties to later meet and confer to determine the scope of Noah's source code production.  The forensic neutral firm shall abide by the terms of the Stipulated Protective Order and any other protective conditions that the parties establish for its review.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the relief requested by the parties in the Joint Discovery Letter Brief.  The parties shall engage a forensic neutral firm to complete the search of Cardona Ujueta's personal device for signs of file transfer.  If such signs are found, then the parties may proceed with the review of Cardona Ujueta's interactions with GitLab.  The forensic neutral firm shall also identify any Noah source code files, firmware, and tests authored or modified by Tatarkhanov, and then share with the parties the minimal amount of information necessary which will allow the parties to meet and confer to determine the scope of Noah's source code production.

**IT IS SO ORDERED.**

Dated: February 13, 2023

LISA J. CISNEROS
United States Magistrate Judge

6